2017 ND 269

**SUNDANCE OIL AND GAS, LLC,**
**Plaintiff and Appellee**

v.

**HESS CORPORATION, Defendant**
**and Appellant**

and

**Barbara B. Corwin and Patricia**
**B. Goldberg, Defendants**

No. 20170148

Supreme Court of North Dakota.

Filed 11/20/2017

Kirsten Tuntland (argued), Zachary E. Pelham (appeared), and Benjamin W. Keup (on brief), Bismarck, ND, for plaintiff and appellee.

Michael J. Mazzone (argued), Houston, TX, and Dante E. Tomassoni (appeared), Duluth, MN, for defendant and appellant Hess Corporation.

David P. Garner, Assistant Attorney General, Office of the Attorney General, Bismarck, ND, for amicus curiae State of North Dakota.

Jensen, Justice.

[¶ 1] Hess Corporation ("Hess") appeals from a summary judgment determining Sundance Oil and Gas, LLC ("Sundance") holds the superior leasehold mineral interest in a property located in Mountrail County. We reverse the district court's judgment and remand for further proceedings.

I

[¶ 2] In May 2014, Sundance sued Hess and the owners of the disputed mineral rights, Barbara B. Corwin and Patricia B. Goldberg, seeking to quiet title to leasehold mineral interests. In 1952, Edward J. Brown acquired a 50/2000ths interest in the mineral rights on the disputed property described as:

Township 154 North, Range 94 West of the 5th P.M.

| Section 23: | S1/2NW1/4, W1/2E1/2, N1/2SW1/4, SE1/4SE1/4, SE1/4SW1/4 |
| Section 25: | E1/2W1/2, SW1/4NW1/4, SW1/4SW1/4, West 20 acres of the SW1/4SE1/4 |
| Section 26: | NE1/4, E1/2NW1/4, N1/2SW1/4 |
| Section 35: | Lot 1 (39.10), NW1/4NW1/4, SE1/4NW1/4, S1/2NE1/4, NE1/4SW1/4, SE1/4, 20 acres located in the SW1/4SW1/4, SE1/4SW1/4 |

Edward Brown died on July 29, 1977 in Broward County, Florida. Edward Brown was survived by his wife, Janet G. Brown, and two daughters, Barbara Corwin and Patricia Goldberg. Edward Brown's wife, Janet Brown, died on January 28, 2000. Both Edward and Janet Brown died intestate and no probate proceedings occurred in North Dakota until October 2013. Hess obtained a leasehold interest in 2011 from Corwin and Goldberg, as the heirs to Edward and Janet Brown's estates. Hess recorded its leases on May 27, 2011. After Hess recorded its leases from Corwin and Goldberg, it obtained permits and began drilling three wells on the property.

[¶ 3] In April 2013, Sundance petitioned the district court to create a trust for Edward Brown's mineral interests because he was an unlocatable mineral owner. After Sundance was unable to locate Edward Brown or his successors, it served him by publication. In the trust action, the district court entered a default judgment and created a trust for Edward Brown's mineral interest after finding Sundance conducted a diligent but unsuccessful effort to locate Edward Brown and his successors in interest. The trustee executed a lease of the property to Sundance on July 17, 2013. Sundance recorded its lease on August 8, 2013.

[¶ 4] In this quiet title action, Sundance and Hess moved for summary judgment, each arguing they had a superior claim to the mineral interests. The district court determined the trust action was res judicata in this quiet title action and granted partial summary judgment in favor of Sundance, quieting title to the leasehold interest. Although the district court entered an order for partial summary judgment, the parties stipulated to the remaining issues related to revenues and expenses, and the district court later entered a final judgment.

II

[¶ 5] On appeal, Hess argues the district court erred in applying res judicata to determine Sundance was a good-faith purchaser for value. Hess also contends the district court erred in granting summary judgment in Sundance's favor because genuine disputes of material fact existed. Additionally, Hess argues the district court erred by concluding Sundance could obtain a superior lease for the same property without providing Hess actual notice of the trust action proceedings.

[¶ 6] First, Hess argues the district court erred in determining that the findings in the trust action were res judicata for this quiet title action. The district court did not reconsider the facts presented by Hess or Sundance in this quiet title action. "Res judicata, or claim preclusion, prevents relitigation of claims that were raised, or could have been raised, in prior actions between the same parties or their privies." *Kulczyk v. Tioga Ready Mix Co.*,

2017 ND 218, ¶ 10, 902 N.W.2d 485 (quoting *Missouri Breaks, LLC v. Burns*, 2010 ND 221, ¶ 10, 791 N.W.2d 33). This Court has concluded, "[f]undamental fairness underlies determinations of privity and res judicata." *Kulczyk*, at ¶ 11 (citations omitted). Additionally, "[t]he doctrine of res judicata does not apply to matters which are incidental or collateral to the determination of the main controversy." *Martin v. Rath*, 1999 ND 31, ¶ 9, 589 N.W.2d 896. This Court reviews the applicability of res judicata as a question of law, fully reviewable on appeal. *Kulczyk*, at ¶ 10.

[¶ 7] The trust action and quiet title action are separate and distinct proceedings with separate results. The district court's order in the trust action is not res judicata for the purposes of determining this quiet title action. The trust statute provides:

> A person that owns a mineral, leasehold, or royalty interest underlying a tract of land may petition the district court of the county in which the tract or a portion of the tract is located to declare a trust in favor of other persons also owning or claiming an interest in the mineral, leasehold, or royalty interest underlying the tract if the place of residence and present whereabouts of the other persons are unknown and cannot reasonably be ascertained. In requesting the appointment of a trustee, the petitioner must show that a diligent but unsuccessful effort to locate the absent owner or claimant has been made and that appointment of a trustee will be in the best interest of all owners of an interest in the mineral, leasehold, or royalty interest.

N.D.C.C. § 38–13.1–01. As a result of the trust action, the property was put into a trust for the benefit of Edward Brown. The district court only determined Sundance undertook a "diligent but unsuccessful effort" to locate the record owner, in accordance with N.D.C.C. § 38–13.1–01. The trustee's lease of the mineral rights to Sundance was an incidental result of the district court's creation of the trust. In comparison, due to this quiet title action, the district court made a final judgment regarding who has the superior right to lease the mineral rights in the disputed property. Considering the facts to determine whether Sundance was a good-faith purchaser for value does not constitute a relitigation of the claims in the trust action.

[¶ 8] We determine the district court improperly applied res judicata and failed to consider the factual issues raised by Hess. This decision and quiet title action will not result in relitigation of claims that were raised, or could have been raised, in the trust action because the trust action did not determine who has · a superior leasehold interest or whether Sundance had notice of Hess's interest. Accordingly, we reverse the district court's judgment and determine the district court erred in applying res judicata to Hess's claims in this quiet title action.

### III

[¶ 9] Hess argues the district court erred in granting summary judgment and determining Sundance was a good-faith purchaser for value without notice of Hess's interest when it executed the lease with the trustee. This Court reviews summary judgment as follows:

> Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing

there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.

*Desert Partners IV, L.P. v. Benson*, 2016 ND 37, ¶ 9, 875 N.W.2d 510 (quoting *Tibert v. Nodak Mut. Ins. Co.*, 2012 ND 81, ¶ 8, 816 N.W.2d 31). Summary judgment is inappropriate if reasonable differences of opinion exist regarding inferences that may be drawn from undisputed facts. *Desert Partners*, at ¶ 10.

[¶ 10] The district court concluded all the underlying facts in this case were judicially determined in the 2013 trust action. Accordingly, the district court granted summary judgment in favor of Sundance and determined Sundance's lease was the first to be recorded in the chain of title. However, the district court erred in applying res judicata to the facts in this quiet title action, and a genuine dispute of material fact exists.

[¶ 11] In 2013, when Sundance's cause of action arose, N.D.C.C. § 47–19–41, provided:

Every conveyance of real estate not recorded shall be void as against any subsequent purchaser in good faith, and for a valuable consideration, of the same real estate, or any part or portion thereof, whose conveyance, whether in the form of a warranty deed, or deed of bargain and sale, or deed of quitclaim and release, of the form in common use or otherwise, first is deposited with the proper officer for record and subsequently recorded, whether entitled to record or not, or as against an attachment levied thereon or any judgment lawfully obtained, at the suit of any party, against the person in whose name the title to such land appears of record, prior to the recording of such conveyance. The fact that such first deposited and recorded conveyance of such subsequent purchaser for a valuable consideration is in the form, or contains the terms, of a deed of quitclaim and release aforesaid, shall not affect the question of good faith of the subsequent purchaser, or be of itself notice to the subsequent purchaser of any unrecorded conveyance of the same real estate or any part thereof. This section shall be legal notice to all who claim under unrecorded instruments that prior recording of later instruments not entitled to be recorded may nullify their right, title, interest, or lien, to, in, or upon affected property.

[¶ 12] "A party's status as a good faith purchaser without notice of a competing interest is a mixed question of fact and law." *Swanson v. Swanson*, 2011 ND 74, ¶ 9, 796 N.W.2d 614 (quoting *Diocese of Bismarck Trust v. Ramada, Inc.*, 553 N.W.2d 760, 768 (N.D. 1996)). This Court has determined the facts "necessary to determine whether a party has attained the status of a good-faith purchaser without notice constitute findings of fact. On the other hand, a trial court's ultimate determination a party acted in good faith constitutes a conclusion of law." *Swanson*, at ¶ 9 (citations omitted).

[¶ 13] This Court has defined a good-faith purchaser as follows:

Good faith is "an honest intention to abstain from taking any unconscientious advantage of another even through the forms or technicalities of law, together with an absence of all information or belief of facts which would render the transaction unconscientious." N.D.C.C. § 1–01–21. A good-faith purchaser must acquire rights without actual or constructive notice of another's rights. [*Farmers Union Oil Co. v.*] *Smetana*, 2009 ND 74, ¶ 16, 764 N.W.2d 665. Actual notice consists of express information of a fact, N.D.C.C. § 1–01–23, and constructive notice is notice imputed by law to a person not having actual notice. N.D.C.C. § 1–01–24. A person who has "actual notice of circumstances sufficient to put a prudent person upon inquiry as to a particular fact and who omits to make such inquiry with reasonable diligence is deemed to have constructive notice of the fact itself." N.D.C.C. § 1–01–25; *Erway v. Deck*, 1999 ND 7, ¶ 10, 588 N.W.2d 862. Whether a party acted in good faith is a question of fact. *Smetana*, at ¶ 15. "The record of any instrument shall be notice of the contents of the instrument, as it appears of record, as to all persons." N.D.C.C. § 47–19–19. This Court long ago recognized that the language in N.D.C.C. § 47–19–19 provides constructive notice of the contents of a recorded instrument to all purchasers and encumbrancers subsequent to the recording. *First Nat'l Bank v. Big Bend Land Co.*, 38 N.D. 33, 37, 164 N.W. 322 (1917). *See Wheeler v. Southport Seven Planned Unit Dev.*, 2012 ND 201, ¶ 17, 821 N.W.2d 746; *Bangen v. Bartelson*, 553 N.W.2d 754, 758 (N.D. 1996).

This Court has "consistently held that a purchaser who fails to make the requisite inquiry cannot claim the protection of a good-faith purchaser status" under N.D.C.C. § 47–19–41. *Swanson v. Swanson*, 2011 ND 74, ¶ 10, 796 N.W.2d 614. "Rather, a person who fails to make the proper inquiry will be charged with constructive notice of all facts that such inquiry would have revealed." *Id.*

*Desert Partners*, 2016 ND 37, ¶ 13, 875 N.W.2d 510.

[¶ 14] A genuine dispute as to material fact exists regarding whether Sundance had notice of Hess's interest in the property as of the date it acquired the lease. "A good-faith purchaser must acquire rights without actual or constructive notice of another's rights." *Desert Partners*, 2016 ND 37, ¶ 13, 875 N.W.2d 510. The district court concluded Hess recorded its lease outside the chain of title, meaning Sundance did not have constructive notice of its lease interest and was a good-faith purchaser.

[¶ 15] The district court properly applied the pre–2013 version of N.D.C.C. § 47–19–41, which required consideration of constructive notice. Sundance argues constructive notice was removed from the 2013 version of the statute and is therefore irrelevant in this case. Section 47–19–41, N.D.C.C., came into effect August 1, 2013. 2013 N.D. Sess. Laws ch. 350, § 1. In a lease, the parties acquire rights to the property when it becomes an enforceable contract between the parties and not when the lease is recorded. *Northern Oil & Gas, Inc. v. Creighton*, 2013 ND 73, ¶ 17, 830 N.W.2d 556. Sundance's lease was executed July 17, 2013, and Sundance recorded the lease August 8, 2013. The cause of action arose prior to the effective date of the updated version of the statute, and there is no indication the legislature intended the statute to be applied retroactively. The district court properly applied the pre–2013 version of N.D.C.C. § 47–19–

41 because both Hess and Sundance's interests arose prior to the effective date of the amended version of the statute. Therefore, we agree with the district court in applying the pre–2013 version of N.D.C.C. § 47–19–41, which considers constructive notice for the purpose of determining whether a party is a good-faith purchaser.

[¶ 16] A properly recorded deed in the tract index gives constructive notice of the ownership to the public. *Hanson v. Zoller*, 187 N.W.2d 47, 55 (N.D. 1971). A purchaser who does not make an inquiry into the status of the property cannot claim the protection of a good-faith purchaser status under N.D.C.C. § 47–19–41. *Desert Partners*, 2016 ND 37, ¶ 14, 875 N.W.2d 510. In *Desert Partners*, a deed from the Kemskes to Thomas Benson was executed in 1990, but was not recorded until 2012. *Id.* at ¶ 3. In 2010, the Kemskes executed a deed conveying the mineral rights to Family Tree, which was recorded. *Id.* In 2005, a statement of a claim of mineral rights was executed by Thomas Benson as power of attorney for Kemske and other owners, which provided constructive notice on the record about Benson's ownership and ability to convey the property. *Id.* at ¶ 15. This Court determined the deed was valid between the parties to the instrument and those with notice, and the statement of claim imposed a duty of further inquiry to ascertain the state of ownership of the disputed mineral interest. *Id.* Further, this Court determined the buyer had constructive notice of the facts an inquiry would have revealed. *Id.*

[¶ 17] The overall extent of Sundance's search for Edward Brown and his heirs raises factual issues, which puts into question Sundance's status as a good-faith purchaser. Hess was capable of locating Edward Brown's heirs, but Sundance was unable to do so even after title examina-

tions and hiring a private investigator. Sundance alleged they were "actively engaged in the exploration for and development" of the area during the trust action. However, Hess was operating on the tract at the time and had permits for wells which Hess received on April 24, 2013. Hess provided an affidavit that a search of the tract index would have shown the Hess leases after May 27, 2011. Sundance petitioned for the creation of the trust and acquired its lease from the trustee in 2013. Sundance provided an affidavit by Jeffrey O'Brien, stating that after an investigation and title opinion, he could not locate Edward Brown. At the summary judgment hearing, the district court raised the issue of the active wells on the property and questioned how Sundance did not have constructive notice of Hess's interest. Sundance argued the permits and wells on the property did not matter because the leases on this tract of land covered fractional shares of the mineral estate, and it is common for one lessee to obtain a permit and drill wells which cover the interests of other lessees.

[¶ 18] Based on the information presented, there is a material factual dispute over what Sundance knew or should have known about Hess's interest in the property. Like in *Desert Partners*, there appear to be facts and recorded documents which would have imposed a duty of inquiry on Sundance. Additionally, Sundance eventually identified that Hess held a leasehold interest in the property because it sued Hess to quiet title. Based on the record, it appears Hess was unaware of Sundance's interest until Sundance sued Hess and Edward Brown's heirs.

[¶ 19] Viewing the facts in a light most favorable to Hess, there is a genuine dispute of material fact about whether Sundance had notice of Hess's lease when Sundance executed the lease with the trus-

tee. Accordingly, we reverse and remand the district court's judgment regarding Sundance's notice of Hess's interest in the property.

## IV

[¶ 20] Hess argues N.D.C.C. § 38–13.1–01 required Sundance to provide actual notice to it in the trust action because it had an interest in the property. Hess argues that if this Court affirms the district court's decision, N.D.C.C. § 38–13.1–01 has been unconstitutionally applied to it by depriving it of due process.

[¶ 21] We need not reach Hess's constitutional argument because we have resolved the matter on other grounds, as discussed above. *See Little v. Graff,* 507 N.W.2d 55, 59 (N.D. 1993). Further, "[a] party may not collaterally attack a final decision, that was not appealed, in subsequent proceedings." *Interest of T.H.,* 2012 ND 38, ¶ 20, 812 N.W.2d 373. The proper place for Hess to challenge whether it was properly notified is in the trust action itself and not in this current quiet title action. A decision on the validity of the district court's decision in the trust action would constitute a collateral attack on that final judgment. Therefore, we need not reach the issue of the constitutionality or the application of N.D.C.C. § 38–13.1–01 in the trust action.

## V

[¶ 22] We reverse the district court's judgment, and we remand for further proceedings.

[¶ 23] Jon J. Jensen

Lisa Fair McEvers

Daniel J. Crothers

Mary Muehlen Maring, S.J.

Gerald W. VandeWalle, C.J.

[¶ 24] The Honorable Mary Muehlen Maring, S.J., sitting in place of Tufte, J., disqualified.